FRANKLIN SUGAR REFINING Co., Appellant, v. COLLIER, ROBERTSON & HAMBLETON *et al.*, Appellees.

1. Sale: RESCISSION FOR FRAUD: EVIDENCE. In an action to rescind a sale, and recover the goods, on the alleged ground that the purchasers procured them by false representations as to their financial condition, *held*, that a question asked the vendor's agent, through whom the goods were sold, as to what effect it would have had upon his dealings with the purchasers had they told him of their indebtedness, was properly excluded as irrelevant.

2. ———: ACKNOWLEDGMENT: NOTICE. The acknowledgment of a bill of sale is immaterial as between the parties thereto, and as to such other persons as have actual notice of the sale; and possession of the goods by the purchaser named in the bill is actual notice to all the world of his interest in the property.

3. ———: RESCISSION FOR FRAUD: EVIDENCE. The fact that an insolvent orders goods on credit is not fraudulent, unless coupled with an intent not to pay for them, or unless the natural and probable, if not necessary, result of his act is to defraud the seller. And in this action to rescind a sale of sugar, and to recover the goods, upon the ground of fraudulent representations, where the evidence showed that the buyers were much in debt at the time, but failed to show that they were insolvent, or that the purchase was made with any fraudulent intent, or by means of fraudulent representations, except the statement that they were now through with their canning business, and would thereafter have plenty of money, and discount their bills promptly, *held*, that the court properly directed a verdict for the defendant.

*Appeal from Lee District Court.*—HON. J. M. CASEY, Judge.

FRIDAY, OCTOBER 6, 1893.

ACTION for the recovery of specific personal property. A verdict was returned for the defendants by direction of the court, upon which a judgment was rendered. The plaintiff appeals.—*Affirmed.*

*Craig, McCrary & Craig*, for appellant.

*F. T. Hughes* and *James C. Davis*, for appellees.

ROBINSON, C. J.—The plaintiff is a sugar refining company engaged in doing business in the city of Philadelphia, and Collier, Robertson & Hambleton were, in the year 1890, engaged in the grocery business in the city of Keokuk, in this state. In the months of October and November of the year specified, Collier, Robertson & Hambleton ordered of plaintiff sugar to the value of five thousand, eight hundred and twenty dollars and seventeen cents, which was shipped to them, the last order having been filled on the twentieth day of November of that year. On the twelfth day of the next month this action was commenced to recover the sugar so shipped, and as a cause of action the plaintiff alleges that, when the sugar was ordered, Collier, Robertson & Hambleton were insolvent, and in a failing condition; that they were unable to pay for the sugar ordered, and well knew their condition; and that the sugar was procured by them by means of false representations in regard to their financial condition. The plaintiff demands judgment for the possession, and right of possession, of the property. After the sugar was shipped to, and received by, the consignees, they executed to their codefendant, J. F. Smith, as trustee, conveyances of the sugar so shipped, and other property, for the purpose of securing the payment of certain debts specified in the instruments of conveyance. Smith accepted the trust, and took possession of the property. After that was done, this action was commenced. An order for the return to the plaintiff of the property in controversy was issued, and, by virtue of it, sugar of the value of nine hundred and eighteen dollars and eighty-two cents, was taken from Smith, and returned to the plaintiff. He claims the property so returned by virtue of the conveyance thereof to him,

and demands judgment for its value. Judgment was rendered in his favor for the value stated, and interest.

I. The person who received the orders in question was a merchandise broker, of Keokuk, named Root. **1. SALE: rescission for fraud: evidence** He had been notified by the plaintiff that Collier, Robertson & Hambleton were not to receive a credit of more than five thousand dollars, and that they were owing the plaintiff six thousand, six hundred and eighty seven dollars and forty-nine cents. About the time the first of the orders in question was given, Root called on Collier and Robertson, of Collier, Robertson & Hambleton at their place of business, and was told by them that they had permitted their sugar bills to run behind on account of the canning business in which they were interested, and which required considerable money; that they were through with the canning season, and would have plenty of money, and would discount their bills promptly. At the same time, they showed Root a draft for the amount they were owing the plaintiff, which they were about to send to it, and which, as we understand the record, was received by the plaintiff. Relying on the statement so made, Root sold the sugar in controversy.

It appears that at the time the conveyances to Smith were executed, two days before this action was commenced, Collier, Robertson & Hambleton were indebted to different persons in amounts which aggregated more than one hundred and eighty thousand dollars. Root testified as a witness, and was asked the following question: "Did they say anything about their owing one hundred and eighty thousand dollars?" But an objection to the question was sustained, and that ruling is alleged to have been erroneous. If erroneous, it was without prejudice, for the reason that the witness afterward testified that Collier, Robertson & Hambleton did not say anything as to how much they owed. Root

was also asked the following: "What effect would it have had on your dealing with them, as the agent of the Franklin Sugar-Refining Company, had they told you of the indebtedness to the bank and the individuals here in Keokuk?" An objection to the question was sustained, and of that the appellant complains. We think the ruling was correct. It is not alleged in the petition that Collier, Robertson & Hambleton fraudulently or wrongfully suppressed knowledge of their actual condition, but that they procured the sugar "under false representations of their financial condition." The answer sought was not relevant to any issue presented by the pleadings.

II.   The pleadings allege that Smith holds the property by virtue of an instrument of conveyance. There appears to have been two, of a similar character, and the plaintiff assails them as being invalid because of defective acknowledgments. Whether the acknowledgments were defective, we need not determine. The instruments appear to have been authorized or ratified by Collier, Robertson & Hambleton, and they not only do not contest them in any manner, but allege a sale and transfer of all their property to Smith prior to the seizure of that in controversy at the suit of the plaintiff, and he had actual possession of it when this action was commenced. The validity of the instruments, as between the parties to them, and as to all persons having actual notice of them, did not depend upon the acknowledgments. Smith's possession was notice to the plaintiff of his interest in the property, and, for the purposes of this case it is immaterial whether the instruments were duly acknowledged and recorded or not.

*2. ——: acknowledgment: notice.*

III.   It is said the district court erred in directing a verdict. The evidence fails to show that Collier, Robertson & Hambleton were insolvent when the merchandise in question was ordered. It is true that, at about the time

*3. ——: rescission for fraud: evidence.*

this action was commenced, they were indebted in a large amount, as we have stated, but the value of their assets was also large.. If it be conceded that the jury might have found that they were, in fact, insolvent when the sugar in question was ordered, it does not follow that the jury might properly have found that the plaintiff was entitled to recover. The fact that an insolvent orders goods on credit is not fraudulent, unless coupled with an intent not to pay for them, or unless the natural and probable, if not necessary, result of his act is to defraud the seller. *Nichols v. Pinner*, 18 N. Y. 299; *Thompson v. Peck*, 18 N. E. Rep. (Ind.) 17; *Kelsey v. Harrison*, 29 Kan. 145; *Bidault v. Wales*, 19 Mo. 37; Cooley, Torts, 478. In *Houghtaling v. Hills*, 59 Iowa, 287, this court held, in effect, that a purchase made by an insolvent, who failed to disclose his insolvency, when, if he had done so, the sale would not have been made, was not fraudulent, and that it was the making of a purchase with the intent on the part of the purchaser to take advantage of his insolvency, and not pay for the property so obtained, which enabled the seller to avoid the sale. In this case, it is not shown that the purchase was made with any fraudulent intent, nor by means of fraudulent representations. It does not appear to have been the duty of Collier, Robertson & Hambleton to disclose their financial condition.. No relation of trust or confidence existed between them and the plaintiff. In *Dambmann v. Schulting*, 75 N. Y. 61, it was said: ''The general rule is that a party engaged in a business transaction with another can commit a legal fraud only by fraudulent misrepresentation of facts, or by such conduct or such artifice, for a fraudulent purpose, as will mislead the other party, or throw him off from his guard, and thus cause him to omit inquiry or examination which he would otherwise make. A party buying or selling property or executing instruments must, by inquiry or

examination, gain all the knowledge he desires. He can not proceed blindly, omitting all inquiry and examination, and then complain that the other party did not volunteer all the information he had." See, also, *Graham v. Meyer*, 99 N. Y. 611, 1 N. E. Rep. 143; *Cleaveland v. Richardson*, 132 U. S. 318, 10 Sup. Ct. Rep. 100; *Talcott v. Henderson*, 31 Ohio St. 162. The plaintiff made no inquiry of Collier, Robertson & Hambleton before selling them the sugar. Their statement that they were through with the canning season, and would have plenty of money, and would discount their bills promptly, so far as it related to their financial ability, was an expression of an opinion in regard to a future event, and, so far as is shown, was made in good faith. We conclude that the evidence submitted did not authorize a verdict for plaintiff, and that the court did not err in directing a verdict. *Meyer v. Houck*, 85 Iowa, 319.

The judgment of the district court is AFFIRMED.