## BUGG *v.* WERTHEIMER-SCHWARTZ SHOE COMPANY.

Opinion delivered April 10, 1897.

EVIDENCE—RELEVANCY.—Upon the question whether one was induced to sell goods on credit by the misrepresentations of the buyer as to his financial condition, the latter testified that before the sale he made a correct statement of such condition to a third person to whom he referred the seller for information. Without challenging the accuracy of such statement, the seller denied that the buyer had informed him of it before the sale Held, that proof of the statement was not admissible. (Page 16.)

FRAUD—INTENT NOT TO PAY.—A purchase of goods by one who at the time intends not to pay for them is such a fraud as will entitle the seller to avoid the sale, although there were no fraudulent misrepresentations or false pretenses. (Page 17.)

SAME—MISREPRESENTATIONS.—One who is induced to sell goods on credit by false representations of the purchaser concerning material facts may rescind the sale if the purchaser either knew such representations to be false, or had no reasonable grounds to believe them true, although the purchaser intended to pay for the goods. (Page 17.)

Appeal from Sebastian Circuit Court, Fort Smith District.

EDGAR E. BRYANT, Judge.

### STATEMENT BY THE COURT.

Action in replevin to recover a lot of goods. The facts upon which the action was based are as follows : The firm of C. Tilles & Co. were in the year 1892 carrying on a mercantile business in Fort Smith, Arkansas. Dave Tilles was business manager, and made the purchases for the firm. In that year he purchased for the firm a lot of boots and shoes from Geo. Millins, agent of Wertheimer-Schwartz Shoe Company, a corporation doing business in St. Louis, Mo. The contract for the purchase was made in Ft. Smith, but it was agreed that Dave Tilles should go to St. Louis, and select the goods before shipment. The lot selected was shipped in September, 1892. In December of that year said firm of Tilles & Co. failed in business, attachments were sued out against them by creditors, and under these attachments their stock of goods was seized, includ-

ing a portion of the goods sold to them by Wertheimer-Schwartz Shoe Company. Afterwards said shoe company brought this action of replevin to recover said goods.

Upon the trial the plaintiff introduced evidence tending to show that it was induced to sell the goods in question by material misrepresentations knowingly made by Dave Tilles to its agent, Millins, at Fort Smith, said misrepresentations having reference to the financial condition of the firm of Tilles & Co. To contradict this testimony, the defendant introduced Dave Tilles as a witness, who denied that he had made such representations, and further testified as follows: "After making the contract with Millins, I went to St. Louis to select the goods, and at that time, before the goods were shipped, I offered to make to Mr. Wertheimer, president and credit man of plaintiff corporation, a full statement of the financial condition of Tilles & Co. Wertheimer replied by saying, ' You are all right, Tilles. I do not want any statement from you.' I had just made a detailed statement of the financial condition of my firm to Rice, Stix & Co., of St. Louis, whose place of business was near that of plaintiff, and when Wertheimer told me he did not wish any statement, I informed him of the statement made to Rice, Stix & Co., and requested him to go and see it. This detailed statement was made orally by me to Mr. Stacey, credit man of Rice, Stix & Co., who took it down in writing, and read it to me as he wrote it. I did not sign it. It was a correct statement of the firm's condition." The defendant then offered to read to the jury as evidence a copy of this statement, but the court refused to permit him to do so, and also refused to allow him to prove the contents of the statement by parol, on the ground that, the statement being in writing, the original statement was the best evidence of its contents, to which ruling defendant excepted.

Wertheimer, testifying for plaintiff, denied that Tilles had offered to make any statement to him, and also denied that Tilles had informed him of the statement made to Rice, Stix & Co., or had any conversation with him in reference to said statement, and further testified that plaintiff had no knowledge of the existence of said statement until after the goods were delivered.

The presiding judge instructed the jury at length upon the law of the case, but the charge, as well as the objections made thereto, can be sufficiently understood from the following extracts therefrom: "This is a suit in replevin brought by plaintiff to recover of defendant a certain lot of goods seized and held by defendant as sheriff under levy of writs of attachment sued out against C. Tilles & Co. by certain creditors. * * Now, the general rule of law is that if one induce another to sell goods on credit by false and fraudulent representations, or if one buys goods from another with the intent not to pay for them, the sale is fraudulent, and the seller has the right, as soon as he learns of the fraud, to rescind the sale, and recover back the goods, and that, too, even though the goods have been attached by another creditor of the buyer. * * * * This case turns upon two questions: First, were the goods purchased by C. Tilles & Co. of plaintiff purchased with the intent at the time of purchase not to pay for them? Or, secondly, was plaintiff induced to sell goods to C. Tilles & Co. by false and fraudulent representations of their agent? If, under the instructions to be given you as to each of these propositions separately, you find either of them in the affirmative, and if you find that the goods replevied in this action are a part of the goods so purchased by C. Tilles & Co., you will find for the plaintiff. Otherwise, you will find for the defendant."

Defendant duly excepted to the instructions given. There was a finding and judgment in favor of plaintiff.

*Rogers & Read,* and *Clayton & Brizzolara,* for appellant.

1. The court erred in refusing to allow oral proof of the contents of the statement made by the agent of C. Tilles & Co. in St. Louis to Rice, Stix & Co. 1 Gr. Ev., § 18, p. 25, (14 ed.); 17 Mass. 165; 10 Johns. (N. Y.) 442; 37 Pa. St. 81; 46 Wis. 407; 11 Wend. (N. Y.) 669; 10 Ad. & El. 470; 8 Taunt. 327. It was a paper collateral to the question at issue, and admissible. (2) At the time of trial, the original was out of the jurisdiction of the court, and not in the control of defendant. 31 Ark. 364; 8 B. Mon. 14, 15; 8 N. H. 337; 19 Mons. 532; 19 Mo. 475; 45 Barb. 41; 9 Cowen, 115; 26 Ga. 537; 33 Ala. 648; 6 Duer (N. C.) 102; 1 Dev.

(N. C.) Law, 173; 3 Watts & S. (Pa.), 395; 10 B. Mon. (Ky.), 115; 11 Mass. 309; 5 U. S. Dig., p. 555, § 1600, title, "Evidence."

2. The court erred in its instructions to the jury in this: They were told that an intention on the part of the buyer, at the time of a purchase of goods, not to pay for them, without any fraudulent representations made by him, or other thing done, except a mere passive intention not to pay, is a sufficient fraud, if proved, to avoid the sale, at the suit of the seller. That is not the law. The intent not to pay must be accompanied by some act, or by some fraudulent concealment of a fact, or by some false representation acting on the mind of the vendor inducing him to part with his goods.    21 Pa. St. 367; 31 *id.* 324; 33 Cal. 621; 1 Green. (Me.), 376; 99 Mass. 253; 9 Gill & J. (Md.), 200; 5 Taunt. 59; 9 Watts (Pa.), 34; 6 Wend. 81; 93 U. S. 631; 1 Paige (N. Y.), 492; 19 Am. Dec. 444; 1 Sandf. Ch. 347; 2 Keyes, 663; 18 N. Y. 306; 2 Lans. 87.

3. It was also error to instruct the jury that any false representation of a material fact, or by which the seller was induced to sell, etc., is sufficient to avoid the sale, notwithstanding the buyer may have intended at the time to pay.    There must be an intention not to pay.    47 Ark. 247, 253; 57 *id.* 574; 45 *id.* 136; 55 *id.* 45; 19 Mo. 36; 20 *id.* 547; 31 Oh. St. 162; 22 Wis. 368, 375; 21 Barb. 585; 93 U. S. 631; 21 Pa. St. 363.

*George H. Sanders,* for appellee.

The court properly ruled out the statement of David Tilles, because (1) the original was the only competent evidence unless proved to be lost or destroyed.    1 Gr. Ev. (14 Ed.) §§ 82, 83, 84, 85 and 86.    (2)    The witness David Tilles, who was the real party in interest, could not introduce the statement as evidence in the case.    46 Ark. 87.    (3).    It was irrelevant and immaterial.    There is no error in the instructions.    47 Ark. 252, and cases cited.    Either an intention not to pay, or false and fraudulent representations, avoid the sale.    *Ib.* and cases cited.    See also 52 Ark. 444.

RIDDICK, J., (after stating the facts.)    We are of the opinion that the judgment of the circuit court should be

affirmed. The circuit court did not err in refusing to allow the appellant to prove the contents of the statement made by Tilles to Rice, Stix & Co., for the particular items contained in that statement were not relevant to the points in issue. "The most important class of facts which are excluded on the ground of irrelevancy," says Mr. Taylor in his work on Evidence, "comprises the acts and declarations either of strangers or of one of the parties to the action in his dealings with strangers. These,—which, in the technical language of the law, are denominated *res inter alios actæ,*—it would be manifestly unjust to admit, since the conduct of one man under certain circumstances, or towards certain individuals, varying as it will necessarily do according to the motives which influence him, the qualities he possesses, and his knowledge of the character of those with whom he is dealing, can never afford a safe criterion by which to judge of the behavior of another man similarly situated, or of the same man towards other persons." 1 Taylor, Ev., § 317. The rule applies in this case. It was not competent for C. Tilles & Co., or those holding under them, to prove the declarations made by Tilles to Rice, Stix & Co. to support his testimony in this case, for these declarations did not tend to show that he had not made other and different statements to the agent of the shoe company, nor did they tend to throw any light on the matters in issue. The appellant was permitted to show by Tilles that he had made a correct statement of the financial condition of his firm to Rice, Stix & Co., and had informed Wertheimer, president of the shoe company, of this statement, and referred him to it for information concerning the firm. This was all appellant had the right to demand. Wertheimer, who testified in rebuttal for plaintiff, did not controvert the fact that Tilles had made such a statement, nor deny that it was a truthful statement, but he denied that Tilles had informed him of such statement, or that the shoe company had any knowledge of the same when it sold the goods. The declarations in this statement, whether true or false, did not tend to contradict Wertheimer, and it was not proper to support Tilles by his own declarations made to third parties. As plaintiff did not controvert either the fact that Tilles had made a statement to Rice, Stix & Co., or that it was

a correct statement, a majority of the judges feel convinced that the particular items thereof were irrelevant, and no prejudice resulted from the refusal to allow proof of the same. *Texas & St. L. Ry. Co.* v. *Donnelly,* 46 Ark. 87; 1 Greenleaf, Ev., §§ 52, 448.

The instructions given by the court were not erroneous. A purchase of goods by one who at the time intends not to pay for them is such a fraud as will entitle the seller to avoid the sale, although there was no fraudulent misrepresentations or false pretenses. If such intention were known to the vendor, it seems clear that he would not sell. The suppression therefore is a legal fraud upon the rights of the vendor, and entitles him to avoid the sale. *Gavin* v. *Armistead,* 57 Ark. 574; *Taylor* v. *Mississippi Mills,* 47 *ib.* 247; *Dow* v. *Sanborn,* 3 Allen (Mass.), 181; Benjamin, Sales (6th Ed.), Bennett's American note, 442; Usher on Sales, §· 274. ·

Nor can we sustain the contention of appellant that to entitle the vendor to avoid a sale after delivery it must in all cases be shown that the vendee did not intend to pay for the goods. That is, as above stated, one ground·on which the sale may be avoided, but not the only one. If the vendee knowingly makes false representations concerning material facts, and thus induces the seller to part with his goods, the seller may elect to avoid the sale, and this without regard to whether the buyer intended to pay for the goods or not. The fraud in such a case consists in inducing the vendor to part with his goods by false statements of the buyer, known to be false when made, or made by him when he has no reasonable ground to believe that they are true. If a vendor parts with his goods on the faith of such false statements made by the buyer, it would be strange if the law permitted the buyer to reap the fruits of such conduct, and retain the goods against the will of the vendor. To illustrate, let us suppose a case. A man with no property, but with great faith in his ability as a merchant, goes to a city and calls on a wholesale merchant for the purpose of buying a stock of goods. He believes that if he can obtain a stock of goods, his experience and ability will soon enable him to pay off the purchase price, but, fearing that the merchant may refuse to sell if he learns that he has no property, he

thereupon, for the purpose of obtaining the goods, states to the merchant that he has money in the bank, and owns a large amount of both real and personal property. The merchant, ignorant of the facts, and relying on the truth of these statements, parts with his goods: He afterwards discovers the fraud, and brings an action to recover the goods. In such a case would it be a valid defense for the buyer to say that, although he had secured the goods .by misrepresentation, yet he did honestly intend to pay for them? Clearly it would not. The courts would answer such a question substantially as it was answered by the Supreme Court of Connecticut when it said that the intent of the buyer to pay "may have lessened the moral turpitude of his act, but it will not suffice to antidote and neutralize an intentionally false statement which had accomplished its object of benefiting himself and of misleading the plaintiffs to their injury." *Judd* v. *Weber*, 55 Conn. 267; *Reid* v *Cowduroy*, 79 Iowa, 169; S. C. 18 Am. St. Rep. 359, and note; *Strayhorn* v. *Giles*, 22 Ark. 517.

Counsel for appellant contend that a different rule was announced by this court in the case of *Taylor* v. *Mississippi Mills*, 47 Ark. 247. It is true that Mr. Justice Smith, who delivered the opinion of the court in that case, said that "in this class of actions the final test is a preconceived intention to get the goods without paying for them;" but this expression must be taken in connection with the facts of that case and with the whole opinion. When so considered, we do not think that case is in conflict with the rule above announced. But if we should concede that these words of the learned judge were intended to convey the meaning imputed to them by counsel for appellant, still they could not affect the decision of this case, for general expressions of opinion by judges, however eminent, do not overturn well-settled rules of law.

Finding no error, the judgment is affirmed.