## RICHARDSON-ROBERTS-BYRNE DRY GOODS CO., Respondent, *v.*, GOODKIND, Appellant.

[No. 1072.]

[Submitted April 4, 1899. Decided April 24, 1899.]

*Sales—Rescision by Seller—False Representations as to Financial Ability—Statements to Commercial Agency—Negligence—Presumptions—Instructions—Harmless Error.*

1. A seller applied to a commercial agency for the buyer's rating, and was furnished with a report based on false statements made to the agency by the buyer. Two months later the seller delivered the goods without making further inquiry, which, if made, would have disclosed the buyer's condition. *Held*, that whether or not the seller was negligent, so as to preclude him from rescinding the sale, as against the buyer's assignee for the benefit of creditors, was a question for the jury to determine.

2. Wilfully false representations by the buyer as to his financial condition, by which he induced the seller to part with property, entitle the seller to rescind though the buyer intended to pay for the goods, and was solvent when such representations were made.

3. Where, in an action to rescind a sale for the buyer's false financial statements to a commercial agency, the proof shows that the report of such statements was the only one ever communicated to the seller, an instruction that, if the seller subsequently obtained other information, changing or affecting the buyer's standing, there was no such reliance on the statement made by the buyer to the agency as would authorize a rescission, was properly refused.

4. The fact that a seller, after receiving a report from a commercial agency concerning a buyer's financial responsibility, based on statements of the buyer to the agency, re-

ceived other information affecting the standing of the buyer, raises no presumption of law that, in afterwards shipping the goods, the seller did not rely on the commercial agency's report.

5.  An instruction stating that if, by additional inquiry at the office of the commercial agency, prior to the shipments, the seller (plaintiff) could have learned of the changed financial rating of the buyer, the verdict must be for defendant, is rightly refused.

6.  A complaint in replevin by a seller was predicated on false representations of the buyer, and on an alleged conditional sale, evidenced by a statement in the invoice that the goods were merely consigned "subject to replevy." The jury found that the seller was entitled to a rescission for the buyer's fraud. *Held,* that refusal to instruct that the statement in the invoice was insufficient to make the shipment a mere consignment was harmless.

*Appeal from District Court, Lewis & Clarke County ; Horace R. Buck, Judge.*

Statement of the case.

Action by the Richardson-Roberts-Byrne Dry Goods Company against Edward I. Goodkind, assignee for the benefit of the creditors of one Israel, to recover certain goods purchased from plaintiff by Israel, and by him delivered to the assignee. For several years immediately preceding August 19, 1895, Israel was engaged in the business of selling liquors and cigars at wholesale, and clothing at retail, at Helena, Mont. In May, 1895, Israel purchased of plaintiff, a trading corporation doing business at St. Joseph, Mo., the goods in question, which were to be delivered on the succeeding 1st of August, and were to be paid for in 60 and 90 days after November 1, 1895. The goods were shipped from St. Joseph on August 1st and 5th, were received by Israel on August 15th, and were turned over to the defendant on August 19th. The complaint states, in substance, these additional facts: Plaintiff was a subscriber to the Bradstreet Company, a commercial agent engaged in the business of obtaining and furnishing to its subscribers information in respect of the financial condition of traders. In February, 1895, Israel made a statement to the Bradstreet Company at Helena, showing that his net assets were $128,700, well knowing that the statement so made by him would be communicated to plaintiff and other persons dealing with Israel, and that his financial reputation, standing and ability to procure credits would be rated accordingly

among dealers, which statement was made for the purpose of obtaining credit from plaintiff, and procuring from it on credit the goods in question. The statement so made by Israel was false to his knowledge; the statement showing that his assets were of the value of $165,000, while he owed only $36,300, whereas, at that time, his debts were in excess of $75,000, and his assets were many thousand dollars less than as stated by him. Israel owed many thousand dollars in excess of the value of his assets, and was, and ever since February, 1895, had been, insolvent. The statement made by Israel to the Bradstreet Company was by the company communicated to plaintiff, which relied thereon, and believed it to be true, and in such reliance and belief shipped and delivered to him the said goods upon credit, and did not receive, and had not received, the price thereof. Israel obtained possession of the goods by reason of his false and fraudulent representations, knowing his inability to pay for the same when the price became due, and without any intention to pay therefor. On August 19, 1895, Israel made to defendant an assignment for the benefit of his creditors, and delivered to him the possession of the goods so obtained from plaintiff, which goods defendant still retains. When plaintiff discovered the falsity of the statements made by Israel concerning his financial condition, it rescinded the sale, and made demand upon defendant for the possession of the goods, with which demand defendant refused to comply; and by reason of the fraudulent representations by which Israel obtained the goods, and an agreement that the goods were to be held on consignment only until November 1st, the title thereto never passed from plaintiff, which is now the owner and entitled to possession of the whole thereof. The defendant, by answer, denied generally all the allegations of the complaint, except those with respect to the character of business carried on by the Bradstreet Company, the making of the assignment on August 19th, and the demand upon defendant for the goods mentioned. Trial was had by jury. The jury found specially that Israel knowingly and intentionally made to the Bradstreet Company the said

false and fraudulent statement concerning his financial condition for the purpose of obtaining credit, that plaintiff relied upon such statement when it shipped the goods, that Israel was solvent on February 16, 1895, and that when he ordered the goods in May he intended to pay for them. The jury returned, also, a general verdict for the plaintiff. Judgment in favor of plaintiff was entered upon the special findings and general verdict, from which, as well as from an order refusing a new trial, the defendant appeals.

*H. G. McIntire* and *Chad. Spaulding*, for Appellant.

At the conclusion of the testimony defendant moved the court to peremptorily instruct the jury to find in his favor, which request was by the court denied. It is elementary that to entitle a vendor of goods to rescind a contract of sale and recover possession of the goods sold he must not only show fraudulent representations on the part of the vendee and his reliance thereon in extending the credit and parting with the goods, but also that he was justified in so doing. (2 Pomeroy's Equity Juris. (2d Ed.) Secs. 891, 892, 893; *Farr* v. *Peterson*, 64 N. W. 863; *Slaughter's Administrators* v. *Gerson*, 13 Wall. 379; *Tootle* v. *Petrie*, 65 N. W. 43; *Starr* v. *Bennett*, 5 Hill. 302; *Crocker* v. *Manley*, 45 N. E. 577; *Moore* v. *Recek*, 44 N. E. 868.) And the law is well settled that unless plaintiff was led by the statement to do that which it otherwise would not have done, it cannot recover. (*Dingle* v. *Trask* (Colo.) 42 Pac. 186; *Klopenstein* v. *Mulcahy*, 4 Nev. 296; *Griswold* v. *Hazels*, 71 N. W. 972; 2 Pomeroy's Equity Juris. (2d Ed.) Sec. 890.) The gravamen of the charge is the intent to defraud, and without proof of that intent there can be no recovery. The jury having found on this issue against the plaintiff, judgment should have been entered upon the special findings in favor of the defendant. (*Brackett* v. *Griswold*, 20 N. E. 376; *Hennequin* v. *Naylor*, 24 N. Y. 139; *Armstrong* v. *Lewis*, 38 Ill. App. 164; *Zucker* v. *Karpelas*, 50 N. W. 373; *Wessels* v. *Weiss*, 27 Atl. 535; *Darby* v. *Koe* 92 Ala. 607.) ''The intent not to pay must exist when

property is purchased, and without proof of such an intent a judgment for the plaintiff cannot be sustained." (*Hotchkin* v. *Third Nat'l Bank*, 127 N. Y. 329; s. c. 27 N. E. Rep. 1054.) "Before the plaintiff can recover in an action to rescind a contract for the sale of chattels on the ground of fraud, he must prove, as a present fact, that the defendant did not intend to pay for the goods when he bought them." (*Swarthout* v. *Merchant*, 47 Hun. 106; *Talcott* v. *Henderson*, 31 Ohio St. 162; s. c. 27 Am. Rep. 501; *Willmot* v. *Lyon*, 34 N. E. 720.)

*Walsh & Newman*, for Respondent.

**PER CURIAM.—1.** At the conclusion of the evidence defendant prayed the court for an instruction directing the jury to return a verdict for the defendant, and the denial of this request is the first error assigned. It is insisted that the peremptory direction should have been given, for the reason that plaintiff was negligent in permitting the goods to pass from its control. It appears that on May 23, 1895, plaintiff applied to Bradstreet's, at St. Joseph, for a report on the financial condition of Israel, and that on May 27th Bradstreet's furnished plaintiff with such report, containing the statement made by Israel on February 16, 1895, and referred to in the complaint. It further appears that on June 28, 1895, Bradstreet's agency at Helena sent out another report concerning Israel financial standing, in which his capital rating given in the report of February 16th was taken away, and his credit rating reduced to a grade next above the lowest reported by the agency, a copy of which report was sent to the office of the Bradstreet Company in St. Joseph. This report was not based upon any statement of Israel, nor did he know it was made. Without making inquiry other than that of May 23d, plaintiff forwarded the goods to Israel on August 1 and 5, 1895. The report of June 28th was never communicated to plaintiff. Defendant argues that by the exercise of reasonable diligence plaintiff might have learned from the Bradstreet Company the true condition of affairs, and withheld the goods

from shipment, and that therefore its failure to make such inquiry was, as a matter of law, such negligence as will prevent a recovery in this action.    We are satisfied that the court was right in refusing to instruct the jury as requested.    Conceding, without deciding, that the evidence just mentioned tends to establish negligence, it is perfectly apparent that the question whether or not the plaintiff exercised prudence was for the jury to determine.    (*Handy* v. *Waldron*, 19 R. I. 618, 35 Atl. 884.)

2.    The next contention is that the special findings of the jury are in conflict with the general verdict, and that the court should have rendered judgment in defendant's favor upon the special findings.    As appears by the statement preceding this opinion, the jury returned a general verdict for plaintiff, and in addition thereto found specially that Israel was solvent on February 16th, and that he intended to pay for the goods at the time he ordered them in May, and, further, that he knowingly and intentionally made the false and fraudulent statement set out in the complaint concerning his financial condition for the purpose of obtaining credit, and that plaintiff relied upon such statement when it shipped the goods.    The position which the defendant takes is that, for the plaintiff to recover in this action, it is necessary to prove, not only that Israel knowingly made the false representations for the purpose of obtaining credit and that the plaintiff relied upon them, but also that Israel either intended at the time not to pay for the goods or was then insolvent.    Such is not the law.    Although the purchaser at the time of the sale was solvent and intended to pay for the goods, yet if, by willfully false representations in respect to his financial condition, the purchaser induces the seller to part with property which, but for such representations, the seller would not have done, the sale may be avoided as to all but *bona fide* purchasers for value.    (*Klopenstein* v. *Mulcahy*, 4 Nev. 296; *Whitaker Iron Co.* v. *Preston Nat. Bank of Detroit*, 101 Mich. 146, 59 N. W. 395; *Schweizer* v. *Tracy*, 76 Ill. 345; *Reed* v. *Pinney*, 35 Ill App. 610; *Collins* v. *Cooley* (N. J. Ch.) 14 Atl. 574.    See, also, *Bank* v.

*Bamberger*, 77 Tex. 48, 13 S. W. 959; *Mooney* v. *Davis*, 75 Mich. 188, 42 N. W. 802; *Hoffman* v. *Noble*, 6 Metc. (Mass.) 68, 39 Am. Dec. 711; *Lowdon* v. *Fisk* (Tex. Civ. App.) 27 S. W. 180; *Cox Shoe Co.* v. *Adams*, 105 Iowa, 402, 75 N. W. 316; *Schram* v. *Strouse* (Tex. Civ. App.) 28 S. W. 264; *Newell* v. *Randall*, 32 Minn. 171, 19 N. W. 972; *Farwell Co.* v. *Boyce*, 17 Mont. 83, 42 Pac. 98; *Hinchman* v. *Weeks*, 85 Mich. 535, 48 N. W. 790; *Emerson* v. *Detroit Steel & Spring Co.*, 100 Mich. 127, 58 N. W. 659; *Silberman* v. *Munroe*, 104 Mich. 352, 62 N. W. 555; *Reid* v. *Cowduroy*, 79 Iowa, 169, 44 N. W. 351; *Wilson* v. *Carpenter's Adm'r*, 91 Va. 183, 21 S. E. 243; *Judd* v. *Weber*, 55 Conn. 267, 11 Atl. 40; *Stephenson* v. *Weathersby* (Ark.) 45 S. W. 987; *Gough* v. *St. John*, 16 Wend. 646; *Bugg* v. *Wertheimer Shoe Co.*, 64 Ark. 12, 40 S. W. 134.)

3. Defendant complains of the refusal of the court to give certain instructions prayed by him concerning the reliance by plaintiff upon the statement made by Israel to the agency. Instruction 2, prayed by defendant and refused, advised the jury that, "if the plaintiff had any other information subsequently to the report received by the plaintiff in May, 1895, which in any way changed or affected the said standing of Israel, then there was not such a reliance upon the said report as would enable the plaintiff to recover in this action." There was no evidence tending to show that plaintiff received any information respecting Israel, before shipping the goods, other than the statement of May 27th; on the other hand, the proof was that the May statement was the only report on Israel ever communicated to plaintiff until after his assignment. Moreover, such information, if received, would not necessarily have the effect attributed to it by the instruction. In other words, nonreliance upon the February statement of Israel, communicated to plaintiff in May, would not be the presumption of law arising from the receipt by plaintiff of such subsequent information.

By the third prayer defendant asked the court to charge that if, by the exercise of additional inquiry at the office of the

Bradstreet Agency, prior to the shipments, plaintiff could have learned of the changed report and rating on Israel of June 28th, the verdict must be for defendant. The court rightly refused so to instruct. If, from the omission to seek further information from Bradstreet's, the inference of negligence may be drawn in this case (which we are inclined to doubt), the jury, not the court, must draw it. Such omission, it is manifest, does not give rise to the legal presumption that plaintiff failed to exercise reasonable care; nor will the law, by reason of the omission, impute to plaintiff notice of Israel's changed financial condition. The charge of the court upon the questions mentioned was certainly as favorable to defendant as he could reasonably ask.

Instruction No. 4, as prayed by defendant, is probably a correct statement of the law with respect to the effect of certain printed matter upon the invoices sent by plaintiff to Israel at the time the goods were shipped, to the effect that the goods were merely consigned "subject to replevin" at any time prior to November 1st. (*Brittain Dry Goods Co.* v. *Birkenfeld*, 20 Mont. 347, 51 Pac. 263.) Whether or not the court erred in not giving this instruction is immaterial, since proof of the allegation in the complaint that the goods were only consigned was not necessary to plaintiff's recovery. The error, if any, was not prejudicial, for the special findings are justified by the evidence, and are sufficient to entitle plaintiff to recover, even if the jury had declared that the goods were not consigned. Were there a general verdict only, it might be difficult, if not impossible, to determine the particular ground upon which the jury decided that plaintiff ought to prevail in the case at bar,—whether the defeasible title in Israel was divested by the plaintiff's election to rescind the voidable sale for fraudulent representations inducing it, or whether the general property in the goods never passed to Israel because they were merely consigned. The special findings, however, aid the general verdict, and reveal the unimportance of determining the issue with respect to the alleged consignment.

The order denying the motion for a new trial and the judgment are affirmed.      *Affirmed.*