(84 N. W. Rep. 350.)

---

## JOHN J. CHILSON *vs.* W. F. HOUSTON.

Opinion filed October 29, 1900.

### Deceit—False Representations—Question for Jury.

In an action to recover damages for a deceit practiced by the seller of a promissory note upon the purchaser thereof, consisting of false representations as to the financial condition of the maker of the note, which are alleged to have induced its purchase, the question as to whether the purchaser relied upon the false statements, and was induced thereby to purchase the note, is a question of fact to be determined by the jury.

### Evidential Facts—Reliance Upon False Statements.

It is not necessary that the false statements and the acts of reliance thereon shall concur in point of time. It is sufficient if such false statements are the inducements causing a person to part with his property, and the length of time intervening between the time when the representations were made and the time when they were acted on is merely an evidential fact, to be considered by the jury in determining whether the false statements were relied upon.

Appeal from District Court, Richland County; *Lauder, J.*

Action by John J. Chilson against W. F. Houston. Judgment for plaintiff. Defendant appeals.

Affirmed.

*F. W. Murphy* and *Charles A. Tuttle,* for appellant.

Antecedent representations made by the vendor as an inducement to the buyer, but not forming a part of the contract when concluded, are not warranties. Benjamin on Sales, § 610; 2 Parsons on Contracts, 477; *Hopkins* v. *Tongueray,* 15 C. B. 130; *Halley* v. *Folsom,* 48 N. W. Rep. 219; *Sculley* v. *Bailey,* 1 H. & C. 405; *Bloss* v. *Kittridge,* 5 Vt. 28.

*Freerks & Freerks,* for respondent.

Under the evidence in this case the question of the right to rely, and of reliance by plaintiff on the false representations of the defendant in making the contract in question is one of fact and not of law. *Nash* v. *Minnesota Title Ins. Co.,* 159 Mass. 437, 34 N. E. Rep. 625; *Ingalls* v. *Miller,* 121 Ind. 188; *Christmas* v. *Frei,* 44 N. W. Rep. 329; *Hopkins* v. *Hawkeye Ins. Co.,* 57 Ia. 203; *Sim* v. *Pyle,* 84 Ill. 271; *Farr* v. *Peterson,* 91 Wis. 182. It will be presumed that the defrauded party acted in reliance upon the false representations when the contrary is not shown. Benjamin on Sales, § § 382-390; Kerr on Fraud & Mistake, § 79; *Boyce* v. *Grundy,* 28 U. S. 210; *Connersville* v. *Wadleigh,* 41 Am. Dec. 214; § § 3940-3942, Rev. Codes. This is not an action on contract of warranty but an action for deceit by which respondent was mislead into making a disadvantageous contract. *Stanhope* v. *Swafford* 45 N. W. Rep. 403; *Phelps* v. *James,* 44 N. W. Rep. 543; *Andrews* v. *Jackson,* 37 L. R. A. 402; Benjamin on Sales, § 610; *Gustavson* v. *Rustemayer,* 70 Conn. 125, 39 L. R. A. 644; *Crane* v. *Elder,* 15 L. R. A. 795. Plaintiff was not bound to forget before the final trading all that had been stated to him six months before concerning the character of the note. "A lie six months old is quite as likely to mislead an innocent party to his damage as one hot from the liar's mouth." *Lindauer* v. *Hay,* 17 N. W. Rep. 98. A false affirmation, made by defendant with intent to defraud, whereby the plaintiff receives damage is ground for action, and it is not necessary that defendant should be benefited by the deceit or that he should collude with the person who is. *Pasley* v. *Freeman,* 2 Smith's Lead. Cas. 1; 3 Waite's Actions & Defenses, 452; *Crause* v. *Busaker,* 81 N. W. Rep. 406; *Bird* v. *Kleiner,* 41 Wis. 134; *Cotzhansen* v. *Simon,* 47 Wis. 473; *Lumber Co.* v. *Myhills,* 80 Wis. 541; *Beetle* v. *Anderson,* 98 Wis. 560. These are actions for damages for false and fraudulent representations inducing the making of contracts, and not contracts for breach of warranties, either embodied in or originally proven to form part of contracts. *Everton* v. *Miles,* 6 Johns. 139.

Young, J. This action is to recover damages for a deceit alleged

to have been practiced by the defendant, whereby the plaintiff claims he was damaged. The complaint, in substance, alleges that on or about December 1, 1898, the plaintiff sold and deeded to the defendant a tract of land situated in Richland county, in this state, for and in consideration of the sum of $1,228; that $728 of the purchase price was paid to the Bank of Fairmount, pursuant to agreement between plaintiff and defendant, in cancellation of an indebtedness held by such bank against plaintiff; that, in payment of the balance due upon the purchase price of said land, the defendant sold and transferred to plaintiff a certain promissory note for $500, executed by one W. T. Boutwell, and payable to the defendant, which note bore date October 19, 1897 and became due two years thereafter; that at the time of the sale of such note and prior thereto the defendant falsely and fraudulently represented to plaintiff that it was a good and collectible note, and falsely and fraudulently stated that the maker was solvent and worth at least $7,000 in property, and that said note was perfectly good and would be paid promptly when due; that said statements and representations were wholly false, and known to be false by the defendant, and that the same were made for the purpose of deceiving the plaintiff as to the true character of said note and the financial condition of the maker; that plaintiff relied upon the representation so made as to the character of the note and solvency of the maker, and accepted the same for the balance of the purchase price of the land; that defendant was not acquainted with the maker of the note, and could not by the exercise of reasonable diligence ascertain its character, as defendant well knew; that the note was then and now is wholly worthless and uncollectible, all of which the defendant well knew; that the aforesaid statements and representations were made by the defendant to deceive the plaintiff and to induce him to accept said note, and that by such representations and statements the plaintiff was deceived and cheated, and induced to accept said note for the balance of the purchase price of his land. He lays his damage at $500 and interest, and makes tender of the note to defendant. The defendant's answer admits the execution and delivery of the deed to him, and that he is the owner of the land. He also admits that he was the owner of the Boutwell note at the date alleged, and that he indorsed it to the plaintiff. All other allegations of the complaint are specifically denied. At the trial in the District Court the issues were submitted to a jury for determination, and a verdict was returned in favor of the plaintiff, assessing his damages at the sum of $569. A motion for new trial was made and overruled. Thereafter judgment was entered. Defendant appeals from the judgment, and urges that the District Court erred in not granting his motion for new trial.

Counsel for defendant relies upon two alleged errors. The first is the denial of a motion for a directed verdict at the close of the case, which motion was upon the ground that the plaintiff had failed to prove facts sufficient to make out his cause of action. Counsel's

particular contention on this point is that under the facts as they appear in evidence the representations· which plaintiff testifies were made could not, as matter of law, have been the inducement prompting plaintiff to part with his property, for the reason, as he claims, that they were remote in point of time, and wholly disconnected with the actual sale and transfer of the note in question. Before considering the question presented in the foregoing proposition, it will be necessary to set out some of the facts shown by the evidence: The defendant was interested in the Bank of White Rock, of White Rock, S. D. His home, however. was at River Falls, Wis., and he spent only a portion of his time at White Rock. Newell Powell, the cashier of the Bank of White Rock, was his son-in-law. The debt of $728 which plaintiff owed to the Bank of Fairmount was secured by a mortgage on the land in question. Plaintiff left word with Powell that he wanted either to sell his land or borrow money on it. Shortly afterwards, and about May 1, 1898, the defendant called on the plaintiff in reference to the matter. All of the witnesses testify that defendant declined to make the loan requested, for the reason, as then stated, that he did not have the money. The witnesses also agree that he offered to buy the land, and in payment therefor to pay or assume the amount due the Bank of Fairmount, and to. give plaintiff the Boutwell note, which he then had with him, and exhibited to plaintiff. Plaintiff declined the offer, and no sale either of the land or note was then made, or until a much later date. It was at this first meeting that the alleged false statements were made, upon which plaintiff relies for a recovery. It is not necessary to narrate the particular statements made by the defendant to plaintiff at that time concerning the financial standing of Boutwell, the maker of the note. The evidence is conflicting on this point, but it is not contended that such statements were not material, or that the jury were not justified by the evidence in finding that they were made as alleged. Defendant's sole contention is that they were too remote, and were not connected with the sale subsequently made. No further negotiations were had between the parties until early in the following December, when they met, and defendant again inquired whether plaintiff would take the Boutwell note for his land, and the offer was again declined by plaintiff. Defendant then stated that he was going to Wisconsin, and might possibly secure money there to make the loan which plaintiff desired, and that plaintiff could leave word with Powell as to what he wanted to do. Within a few days plaintiff informed Powell that he still wished to secure the loan from defendant. This was communicated to defendant, and he replied that he would make it. On the next day, however, and before the loan was completed, plaintiff informed the defendant, through Powell, that he had decided to take the Boutwell note for his land. The note was at once sent to plaintiff, and the latter executed and delivered the deed of his land. No statement of any kind was made by the defendant to plaintiff concerning Boutwell's financial standing subsequent to their first

negotiations on the 1st of the preceding May. It appears that in the intervening time plaintiff had not thought seriously of accepting defendant's proposition. Boutwell is of Indian descent, and lived on the White Earth Indian reservation, in Minnesota, when the note in question was executed, and for several years prior to that time. Before that he lived in Wisconsin. The defendant owned this note, and also another for the same amount. He personally secured the execution of these notes by Boutwell at White Earth. They were renewals of an old claim which defendant had held against Boutwell for years. How old it was is not certain, but he admitted it was from 7 to 17 years old when renewed in these notes. The jury were justified in finding that the note was worthless. Defendant knew Boutwell, both in Wisconsin and Minnesota. The plaintiff had no information concerning him, save that acquired from the defendant when the latter first proposed the sale of the note. Upon this state of facts the trial court was asked to declare, as a proposition of law, that the statements made by defendant in May as to Boutwell's financial standing were wholly disconnected with the subsequent sale of the note, and could not legally be relied upon by the plaintiff, or serve as inducement to him to make·such purchase in December. This the trial court declined to do, and we think properly. The question which is decisive on this point is this : Did plaintiff rely and act upon the false statements to his damage? Whether he relied upon them is not a question of law, but a question of fact, purely. The question is not whether the false statements should have induced plaintiff to part with his property, but is this : Did they induce him to do so? This is always for the jury, where there is substantial evidence warranting the conclusion that the false statements were relied upon. We know of no principle of law which requires that the false statements and the reliance thereon shall concur in point of time. *Allen* v. *Truesdell,* 135 Mass. 75; *Lindauer* v. *Hay* (Iowa) 17 N. W. Rep. 98. As was said in *Morris* v. *People,* 4 Col. App. 136, 35 Pac. Rep. 188: "It is simply essential that the party make a false statement, and that the proof show that on account of it the goods were transferred. In other words, the misrepresentation must be the operative cause of the transfer." The remoteness or nearness of the misrepresentations to the sale go to their weight as evidential facts on the question whether they were the inducements to the sale. Of course, when there is no evidence that the false statements were actually relied upon, the court should direct a verdict, but that is not this case. The evidence shows that the plaintiff parted with his land for this note. He supposed he was getting the value of his equity, in the form of a good and collectible note. He knew of its value only through defendant's statements. In estimating its value he had nothing else to rely upon, and under these conditions it is absurd to say that the jury were not justified in concluding that he did rely upon what defendant had told him in May when he took the note in December. As holding that the question whether reliance was

placed upon the false statements is for the jury, see *Nash* v. *Trust Co.,* 159 Mass. 437, 34 N. E. Rep. 625; *Ingalls* v. *Miller,* 121 Ind. 188, 22 N. E. Rep. 995; *Christmas* v. *Frei* (Mich.) 44 N. W. Rep. 329; *Hopkins* v. *Insurance Co.,* 57 Ia. 203, 10 N. W. Rep. 605; *Sim* v. *Pyle,* 84 Ill. 271; *Farr* v. *Peterson,* 91 Wis. 182, 64 N. W. Rep. 863. For authorities in support of the proposition that false statements of fact, such as were made in this case constitute actionable deceit, and that damages directly resulting therefrom may be recovered, see *Andrews* v. *Jackson,* 168 Mass. 266, 47 N. E. Rep. 412, 37 L. R. A. 402; *Crane* v. *Elder* (Kan. Sup.) 29 Pac. Rep. 151, 15 L. R. A. 795; *Gustafson* v. *Rustemeyer,* 70 Conn. 125, 39 Atl. Rep. 104, 39 L. R. A. 644.

Counsel, while conceding that the evidence shows Boutwell's insolvency at the time the note was actually transferred, contends that it does not show he was insolvent when the representations were made in May. There is respectable authority holding that, where false statements have been made for the purpose of obtaining property from another, every step thereafter taken in the transaction is in itself a repetition of the falsehood. *State* v. *House,* 55 Ia. 466, 8 N. W. Rep. 307. So, also, it is held that where untrue statements have been made through mistake, and the person making them thereafter acquires a knowledge of their falsity, and before they are acted on, his mere silence gives to them a fraudulent character. *Porter* v. *Beattie,* 88 Wis. 22, 59 N. W. Rep. 499. In the case at bar, however, it is not necessary to resort to either of the above rules; for there is, we think, abundant evidence to show that Boutwell was insolvent, not only when the sale was actually consummated, but also in the previous May, when the representations were first made.

In the trial of the case, plaintiff's counsel in his closing argument to the jury, stated that plaintiff had rescinded the contract and made an offer to return the note. This was excepted to, and is assigned as prejudicial error. The offer was unnecessary and improper; for plaintiff's right to recover damages was based, not upon a rescission of the contract, but upon an affirmance of it, and we can readily see how a statement of this character might be prejudicial under some conditions. Counsel for plaintiff mistakenly assumed that it was necessary to return the note in order to recover damages for the deceit; for he not only made the statement complained of, but in his complaint made a specific offer and tender of the note to the defendant. The jury were not misled, however, for the court thereafter specifically instructed them that there had been no rescission of the contract, and, further, that if they found for the plaintiff his measure of damages would be the difference between what the note would have been worth had it been as represented, and what it was in fact worth at the time it was transferred. These instructions, we think, sufficiently corrected and cured counsel's statement. The motion for new trial was properly overruled. The judgment of the District court is affirmed. All concur.